UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SHAWN WILSON,                )
                             )
            Plaintiff        )
                             )   CAUSE NO. 3:10-CV-123 RM
    vs.                      )
                             )
WILL PATTERSON, D. FOREHAND, )
and ROSE VAISVILAS,          )
                             )
            Defendants       )

OPINION AND ORDER

Shawn Wilson, a *pro se* prisoner, filed this civil rights complaint against medical staff at the Indiana State Prison ("ISP"). Pursuant to 28 U.S.C. § 1915A, the court must review a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(a), (b). Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief may be granted. Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6). Lagerstrom v. Kingston, 463 F.3d 621, 624 (7th Cir. 2006). To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim for relief that is plausible on its face. Bissessur v. Indiana Univ. Bd. of Trs., 581 F.3d 599, 602-603 (7th Cir. 2009). In determining whether the complaint states a claim, "[a] document filed *pro se* is to be liberally construed, and a *pro*

1

*se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). To state a claim under § 1983, a plaintiff must allege: "(1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." Savory v. Lyons, 469 F.3d 667, 670 (7th Cir. 2006).

According to the complaint and attached documents, on December 29, 2009, medical staff saw Mr. Wilson for an abscess and prescribed medication for him. Will Patterson, a nurse at ISP, gave Mr. Wilson the medication that had been prescribed, including the antibiotic Erythromycin, which he was to take for ten days. The nest day, Mr. Wilson was at work when Nurse Patterson came to speak with him and told him that he had been issued the "wrong" medication. (DE 1 at 3; DE 1-1 at 2-3.) Nurse Patterson asked Mr. Wilson whether he was having any adverse reaction to the medication he had been given. Mr. Wilson doesn't say how he responded to this question. He alleges that Nurse Patterson told him that if he wasn't having any adverse reactions to continue taking the medication, and that if any problems developed to come see him.

Mr. Wilson alleges that he later developed a rash which he believed to be an allergic reaction to the medication. He alleges that he asked an unidentified health care staff member for medication to counteract the reaction and was told to submit a health care request so he could be seen at sick call. He doesn't say whether he submitted a request as directed or whether he was seen at sick call. About two weeks later (and several days after the course of antibiotics would have been completed), Mr. Wilson submitted a grievance

"in an attempt to obtain proper treatment without paying [an] additional co-pay." (DE 1 at 3.) In the grievance, he stated that he had an uncomfortable rash and felt he shouldn't be charged for treatment of the rash because in his view it was caused by the medical staff's mistake.

D. Forehand, the Director of Nursing at ISP, responded to the grievance. He stated that when Mr. Wilson was prescribed the medication, no drug allergies had been listed in his electronic medical record, but he noted that there was a paper document in Mr. Wilson's medical file indicating that he had developed a "slight rash" while taking Erythromycin some years earlier.[1] (DE 1-1 at 9.) He further stated that no documentation showed that Mr. Wilson had asked for medical care or alerted medical staff that he was having any problems with the medication before filing the grievance. He directed Mr. Wilson to file a health care request so medical staff could deal with the issue. (DE 1-1 at 9.)

It isn't clear whether Mr. Wilson put in a health care request. He appealed the denial of his grievance, stating, "I want this allergic reaction treated at no cost." (DE 1-1 at 7.) Rose Vaisvilas, the Director of Health Services at ISP, denied the appeal, noting that when the medication was prescribed, the electronic medical record didn't indicate that Mr. Wilson had any drug allergies. She said the record had since been updated to reflect that he has an allergy to Erythromycin. She noted that there was no documentation to reflect that Wilson had needed or asked for medical care as a result of any adverse reaction caused by

---

[1] Mr. Wilson has submitted a medical record showing that approximately eight years before this incident, he developed a rash while taking Erythromycin. (DE 1-1 at 4-5.)

3

the medication. She further noted that records showed a nurse practitioner saw Mr. Wilson on January 26, 2010, for his routine chronic care appointment and the records of that visit reflected that he had no complaints.

A defendant violates an inmate's right to medical care under the Eighth Amendment when he is deliberately indifferent to the plaintiff's serious medical need. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). Conduct is deliberately indifferent "when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotation marks omitted). To be liable for deliberate indifference to an inmate's medical needs, a medical professional must have made "a decision that represents such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008). Negligence, incompetence, or even medical malpractice don't amount to deliberate indifference. Pierson v. Hartley, 391 F.3d 898, 902 (7th Cir. 2004); Walker v. Peters, 233 F.3d 494, 499 (7th Cir. 2000).

Mr. Wilson hasn't alleged facts amounting to an Eighth Amendment violation. To begin with, it isn't clear that Mr. Wilson had a serious medical need; although he says his rash was "very uncomfortable," it cleared up in a few weeks after he stopped taking the medication and doesn't seem to have impacted his functioning. *See* Reed v. McBride, 178

F.3d 849, 852 (7th Cir. 1999) (a condition is objectively serious only if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain."); *see also* Thomas v. Vaisvilas, No. 3:07cv205, 2009 WL 1307574, at *8 (N.D. Ind. May 8, 2009) (minor skin condition did not constitute a serious medical need).

Even assuming Mr. Wilson could satisfy this requirement, he hasn't alleged that any of the defendants were deliberately indifferent to his medical needs. As to Nurse Patterson, the complaint reflects that he gave Wilson medication prescribed by a medical provider,[2] and at that time there was nothing in the electronic medical record to reflect that Mr. Wilson had a drug allergy. Nurse Patterson somehow later caught the error and promptly went to speak with Mr. Wilson to ask him how he was feeling. Although Mr. Wilson doesn't explain how he was feeling at that point, he was at work when Nurse Patterson came to speak with him. Mr. Wilson doesn't allege that he told Nurse Patterson he was having any problems with the medication, and nothing in the complaint supports an inference that Mr. Wilson was having obvious signs of distress that would have triggered the need for medical care at that stage.

Nurse Patterson told Mr. Wilson to come speak with him if he developed any problems, and although Mr. Wilson claims he developed a rash as a result of the medication, nothing in the complaint indicates that Nurse Patterson knew of the rash, or

---

[2] Mr. Wilson submitted a medical record completed by Nurse Patterson stating, "Meds issued by provider 12/29/09." The record doesn't reveal who prescribed the medication. (*See* DE 1-1.) Mr. Wilson doesn't specifically allege, nor is it reasonable to infer, that Nurse Patterson would have the ability to prescribe medications.

5

that he even had any further involvement in the case after speaking with Mr. Wilson on December 30. Mr. Wilson might conceivably state a claim for medical malpractice or negligence based on these facts (an issue on which the court offers no opinion), but his allegations don't rise to the level of establishing deliberate indifference in violation of the Eighth Amendment.

Mr. Wilson's allegations against Forehand and Vaisvilas state no Eighth Amendment claim. Mr. Wilson doesn't allege, and it can't be reasonably inferred from the complaint, that either of them denied Mr. Wilson medical treatment. Instead, Mr. Wilson's main complaint against them appears to be that they wouldn't give him free care for the treatment of his rash. Although the Constitution guarantees that inmates receive necessary medical care, it doesn't guarantee free medical care. *See* City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 245 n.7 (1983). Mr. Wilson doesn't allege that he was denied care because he couldn't afford to pay for it, only that as a matter of principle he should not have been charged. This doesn't state an Eighth Amendment claim.

In short, Mr. Wilson's allegations against the defendants don't amount to a violation of the Eighth Amendment. To the extent Mr. Wilson is also trying to raise state law claims of negligence or medical malpractice based on these events, the court declines to exercise supplemental jurisdiction over these claims and dismisses them without prejudice. *See* Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dirs., 593 F.3d 507, 513 (7th Cir. 2010) ("Ordinarily, when a district court dismisses the federal claims conferring original

jurisdiction before trial, it relinquishes supplemental jurisdiction over any state-law claims under 28 U.S.C. § 1367(c).").

Mr. Wilson's federal claims are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915A, and his state law claims are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(3).

SO ORDERED.

ENTERED: April  16 , 2010.

                                              /s/ Robert L. Miller, Jr.
                                             Judge
                                             United States District Court

cc: S. Wilson